UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

ROBERTO RODRIGUEZ,          :

                   Petitioner,          :

   -v-          :

ATTORNEY GENERAL,          :

                   Respondent.          :

----------------------------------------------------------------X

REPORT AND
RECOMMENDATION

10 Civ. 3868 (PGG) (JLC)

(Non-ECF Case)

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Paul G. Gardephe, United States District Judge:**

       Pro se Petitioner Roberto Rodriguez ("Rodriguez" or "Petitioner") seeks a writ of habeas

corpus under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254, challenging his February 21, 2006 conviction, after a jury trial, of persistent sexual abuse

(N.Y. Penal Law § 130.53 (McKinney 2010)) and public lewdness (id. § 245.00). Rodriguez was

sentenced to concurrent terms of two to four years of imprisonment on the sexual abuse charge

and 90 days of imprisonment on the public lewdness charge. Having served the maximum

sentence, Rodriguez was discharged from the Attica Correctional Facility in Attica, New York on

September 11, 2009. As a result of the conviction, however, Rodriguez must register as a sex

offender for the rest of his life under the New York State Sex Offender Registration Act

("SORA"), N.Y. Correct. Law § 168(f) (McKinney 2010), and otherwise comply with SORA's

requirements. For the reasons discussed below, I recommend that the Court dismiss Rodriguez's

Petition because SORA's requirements constitute collateral consequences of his conviction and

are insufficient to render him "in custody" for federal habeas corpus purposes.

USDC SDNY
DATE SCANNED

## I.   BACKGROUND

### A.   Rodriguez's Arrest and Trial

Beginning on January 30, 2006, Rodriguez was tried before the Honorable Renee White in State Supreme Court, New York County (the "trial court"). Rodriguez presented no evidence at trial. The following facts are derived from the evidence presented by the prosecution at trial, the instant petition, and the underlying record:

On August 31, 2005, MV boarded the subway at West 34th Street in Manhattan.[1] Trial Transcript ("Trial Tr."): Proceedings at 158. When the train stopped, MV sat down in an empty seat and began reading the newspaper. Id. at 160-62. Shortly thereafter, she felt something touching her arm. Id. at 162. When MV looked up, she discovered that Rodriguez was pushing his naked, erect penis against her arm. Id. at 162-63. MV then cursed at Rodriguez and asked him what he was doing. Id. at 163. Rodriguez apologized and ran off the train after its next stop. Id.

When MV arrived home about 30 minutes later, she called 911, and reported the incident. Id. at 165-66. Responding officers came to her apartment, and MV again recounted the incident and gave the officers a description of Rodriguez. Id. at 166.

After an investigation, on the morning of September 13, 2005, the police arrested Rodriguez in Manhattan. Id. at 207-08. During the ride to the police station, Rodriguez repeatedly asked the arresting officers what he was under arrest for. Id. at 212. When one of the

---

[1] In order to protect the identity of the victim of Rodriguez's sex offenses, pursuant to N.Y. Civ. Rights Law § 50-b (McKinney 2010), I will refer to the victim by the initials of her first and last name.  See Lucidore v. New York State Div. of Parole, 209 F.3d 107, 109 n.4 (2d Cir. 2000) (requirements of § 50-b satisfied through court's use of initials to identify sex offense victim).

2

officers told Rodriguez the allegations against him, Rodriguez responded that "she let [him] do it" and that "women like it." Id.  After Rodriguez had been placed in a cell at the police precinct, he again reiterated that "women like [it]" and stated "[t]hat he has done this before, and he used to spend hours and hours on the train doing this." Id. at 214.  Later that afternoon, the police took Rodriguez into an interview room for questioning and read him his Miranda warnings. Id. at 216-18.  Rodriguez then agreed to speak with the officers. Id. at 219-20.  He stated that he had in the past approached other women in the same manner in which he approached MV and contended that "if [the women] don't object to it[,] they are comfortable with it, and they are consensual, . . . ." Id. at 221.  Rodriguez then signed a written statement to the same effect. Id. at 223.  He wrote as follows:

> Sorry, I got a problem where I believe that women is [sic] comfortable with me exposing or getting close with them.  If any of these women react in a negative way, I immediately stop.  If they don't, then I understand they are comfortable with what I'm doing.

Id. at 223-24.

Around six o'clock that evening, during a lineup at the precinct, MV identified Rodriguez as the person who assaulted her on the subway on August 31, 2005. Id. at 174.

## B.    Verdict and Sentencing

On February 1, 2006, the jury found Rodriguez guilty of persistent sexual abuse and public lewdness. Id. at 353-57.  On February 21, 2006, the trial court sentenced Rodriguez to concurrent terms of two to four years of imprisonment for the persistent sexual abuse charge and 90 days of imprisonment for the public lewdness charge. Trial Tr.: Sentence at 10.  The trial court also deemed Rodriguez a sexual offender. Id.

### C.      Rodriguez's Direct Appeal

Rodriguez appealed his conviction to the New York State Supreme Court, Appellate

Division, First Department (the "Appellate Division"), contending that (1) the trial court

erroneously admitted evidence of Rodriguez's oral and written statements, which were fruit of

un-Mirandized custodial interrogations by the police; and (2) Rodriguez's trial counsel was

ineffective for failing to argue successfully that the trial court should have suppressed these

statements.   Declaration of Paul M. Tarr in Support of Respondent's Motion to Dismiss the

Petition, dated November 15, 2010 ("Tarr Decl.") Ex. A, at 12-29 (Dkt. No. 11).

The Appellate Division rejected Rodriguez's arguments and affirmed his conviction on

October 9, 2008.  Tarr Decl. Ex. D (Dkt. No. 11); People v. Rodriguez, 55 A.D.3d 351, 351, 864

N.Y.S.2d 433, 434 (1st Dept. 2005).  Regarding Rodriguez's claim concerning the inculpatory

statements he made to police, the Appellate Division first concluded that it "need not determine

whether that statement by the detective [to Rodriguez on the way to the precinct] was the

functional equivalent of interrogation requiring Miranda warnings."  Rodriguez, 55 A.D.3d at

351, 864 N.Y.S.2d at 434.  It concluded, moreover, that any error by the trial court "in admitting

the statement defendant thereafter made was harmless, as there was no reasonable possibility that

it affected the verdict."  Id. at 351, 864 N.Y.S.2d at 434 (citation omitted).  Next, it concluded

that Rodriguez's "subsequent pre-Miranda statements in his cell were entirely spontaneous, and

not the result of any police conduct."  Id. at 351-52, 864 N.Y.S.2d at 434.  Finally, it concluded

that Rodriguez's argument that his post-Miranda statements should have been suppressed was

unpreserved.  Id. at 352, 864 N.Y.S.2d at 434-35.  Moreover, as an alternative holding, the

Appellate Division rejected the argument on the merits, reasoning that the "statements were

4

sufficiently attenuated, since there was a pronounced break between the statements in question, and defendant had demonstrated an unqualified desire to speak to the detective." Id. at 352, 864 N.Y.S.2d at 435 (citations omitted).

Regarding Rodriguez's ineffective assistance of counsel claim, the Appellate Division simply concluded that the claim was "not properly before [it]." Id. at 352, 864 N.Y.S.2d at 435 (citation omitted).

Rodriguez then sought leave to appeal the Appellate Division's decision to the Court of Appeals. Tarr Decl. Ex. F (Dkt. No. 11). The Court of Appeals denied Rodriguez leave to appeal on February 5, 2009. Id. Ex. H; People v. Rodriguez, 12 N.Y.3d 762, 876 N.Y.S.2d 713 (2009) (table).

### D.   Rodriguez's Motion to Vacate Judgment and Set Aside the Sentence

Rodriguez, proceeding pro se at this point, next filed a motion pursuant to N.Y. Crim. Proc. L. §§ 440.10, 440.30 (McKinney 2010) to vacate and set aside the judgment. Tarr Decl. Ex. I (Dkt. No. 11). Rodriguez contended that his trial counsel was ineffective for failing to argue that (1) the State failed to comply with certain discovery obligations; and (2) Rodriguez was improperly charged with persistent sexual abuse. Id. Ex. I, at 3-5.

The trial court, by decision dated July 3, 2008, denied Rodriguez's motion and concluded that "[s]ufficient facts appear on the record concerning trial counsel's alleged failures to permit adequate review on appeal. Therefore, relief pursuant to C.P.L. § 440.10 is unavailable." Id. Ex. K, at 2. Rodriguez then moved for leave to appeal the denial of the motion to the Appellate Division. Id. Ex. L. On September 24, 2008, the Appellate Division denied him leave to appeal. Id. Ex. N.

5

**E.    Rodriguez's Discharge from Prison and Status as a Registered Sex Offender**

Having served a maximum sentence for his crimes, Rodriguez was discharged from the Attica Correctional Facility on September 11, 2009. See Declaration in Support of Petitioner's Opposition to Respondent's Motion to Dismiss the Petition, dated November 23, 2010 ("Pet'r's Decl.") at 2 (Dkt. No. 12); New York State Department of Correctional Services, Inmate Lookup, Inmate DIN # 06R1079, http://nysdocslookup.docs.state.ny.us/ (last visited Feb. 15, 2011). Although Rodriguez is not subject to parole supervision, see Tarr Decl. Ex. O (Dkt. No. 11), he has been determined to be a level three sex offender and accordingly must comply with the requirements of SORA. Pet'r's Decl. at 2 & Ex. Q (Dkt. No. 12); New York State Division of Criminal Justice Services, Public Registry of Sex Offenders, http://www.criminaljustice.state.ny .us (last visited Feb. 15, 2011). Among other things, SORA requires Rodriguez to report to the Sex Offender Monitoring Unit of the New York City Police Department to personally verify his address every 90 days. See Pet'r's Decl. at 2 & Ex. P (Dkt. No. 12); N.Y. Correct. Law § 168-h(3).

**F.    The Instant Petition**

Rodriguez filed a pro se petition for a writ of habeas corpus on March 24, 2010.[2] Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus, dated March 18, 2010 ("Petition" or "Pet.")

---

[2] Since Rodriguez is proceeding pro se, his submissions "'must be held to less stringent standards than formal pleadings drafted by lawyers.'" Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). Additionally, the Court must liberally construe the pleadings "'to raise the strongest arguments that they suggest.'" Diaz v. United States, 517 F.3d 608, 613 (2d Cir. 2008) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Pro se status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation and internal quotation marks omitted).

at 1 (Dkt. No. 2).  Rodriguez asserts six claims for relief in the Petition: (1) a recording of MV's call to the police after the incident was inauthentic; (2) the State failed to provide him with certain discovery materials; (3) his written inculpatory statement was falsified; (4) he was improperly charged with persistent sexual abuse; (5) his trial counsel was ineffective; and (6) his appellate counsel was ineffective.  Id. at 5-11.  Moreover, although he is no longer incarcerated, Rodriguez stresses the effects of the allegedly wrongful conviction on him: "I am unlawfully register[ed] as a sex offender level 3 restraining [sic] my freedom in unlimited ways in N.Y. State and the whole U.S.A. for the rest of my life."  Id. at 11.

## II.    DISCUSSION

Respondent contends that the Court must summarily dismiss Rodriguez's Petition for lack of jurisdiction because Rodriguez fails to meet the threshold requirement that he be "in custody" pursuant to his 2006 conviction on the date he filed the Petition.  Respondent's Reply Memorandum of Law, dated December 7, 2010 ("Resp't's Mem.") at 2 (Dkt. No. 13).  More specifically, Respondent contends that SORA's registration requirements are collateral consequences of Rodriguez's conviction that do not satisfy the "in custody" requirement for purposes of habeas review.  Id. at 2-5.

Rodriguez argues that the "in custody" requirement "has been broadly construed to include . . . significant restrints [sic] on a person's liberty" and that SORA's requirements restrain his liberty sufficiently to render him "in custody" for purposes of habeas review. Memorandum of Law in Support of Opposition to Respondent's Motion to Dismiss the Petition, dated November 23, 2010 ("Pet'r's Mem.") at 3-4 (Dkt. No. 12).  Rodriguez cites SORA's address registration provisions and its requirement that he report to the NYPD's Sex Offender

7

Monitoring Unit every 90 days as evidence of such a restraint on his liberty. Id. at 3-4.

Consequently, the threshold issue here—one which neither the Second Circuit, nor any judge in this district has addressed—is whether SORA's requirements constitute merely collateral consequences of a sex offender's conviction or a restraint on liberty severe enough to render a sex offender "in custody" for purposes of habeas review. For the reasons discussed below, I conclude that SORA's requirements constitute collateral consequences of Rodriguez's conviction and are insufficient to render Rodriguez "in custody" for purposes of federal habeas corpus jurisdiction.

### A.   "In Custody" Requirement

28 U.S.C. § 2254(a) provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Section 2254's "in custody" requirement is jurisdictional—a petitioner must be "in custody" to invoke the habeas jurisdiction of a federal court. See Maleng v. Cook, 490 U.S. 488, 490-91 (1989) (per curiam) (citing Carafas v. LaVallee, 391 U.S. 234, 238 (1968)); Ogunwomoju v. United States, 512 F.3d 69, 73-75 (2d Cir. 2008).

Although historically the Supreme Court interpreted the "in custody" requirement narrowly, see, e.g., Whales v. Whitney, 114 U.S. 564, 569-70 (1885) (no habeas relief where "petitioner is under no physical restraint" with no one to hinder his movements); Stallings v. Splain, 253 U.S. 339, 343-44 (1920) (no habeas relief where petitioner released on bail); McNally v. Hill, 293 U.S. 131, 138 (1934) (no habeas relief unless granting petition would release petitioner from incarceration); Weber v. Squier, 315 U.S. 810, 810 (1942) (habeas

petition moot where petitioner released on parole and is no longer incarcerated), the Supreme

Court has since substantially broadened its interpretation of the "in custody" requirement and

determined that custody is not only defined by physical confinement, but also by certain

"conditions which [can] significantly confine and restrain [a petitioner's] freedom." Jones v.

Cunningham, 371 U.S. 236, 243 (1963). Indeed, in a more recent decision, Hensley v. Municipal

Court, the Supreme Court again stressed the very same principle—"[t]he custody requirement of

the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe

restraints on individual liberty. . . . [I]ts use has been limited to cases of special urgency, leaving

more conventional remedies for cases in which the restraints on liberty are neither severe nor

immediate." 411 U.S. 345, 351 (1973); accord Poodry v. Tonawanda Band of Seneca Indians, 85

F.3d 874, 894-95 (2d Cir. 1996) (members of Indian band subject to banishment order by tribal

officials "in custody" for habeas purposes because order allowing band to be permanently

removed from reservation at any time constitutes severe restraint on band's liberty).

     The Supreme Court concluded in Jones, for example, that habeas relief is available for

prisoners released on parole. Jones, 371 U.S. at 242-43 (holding parole constitutes custody

because parole conditions, among other things, "restrain petitioner's liberty to do those things

which . . . free men are entitled to do"); see also Earley v. Murray, 451 F.3d 71, 75 (2d Cir. 2006)

(petitioner on parole or serving term of supervised release is "in custody") (citations omitted).

Similarly, in Hensley, it concluded that habeas relief is available for prisoners released on their

own recognizance. 411 U.S. at 351 (release on own recognizance constitutes custody because,

among other things, petitioner is subject to "restraints not shared by the public generally," the

obligation to appear at times and places ordered by a court, and because "[h]is freedom of movement rests in the hands of state judicial officers").

However, the Supreme Court has also made clear that "once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." Maleng, 490 U.S. at 492.  Examples of such collateral consequences include deportation; inability to become a citizen, vote, engage in certain businesses, hold public office, or serve as a juror; impeachment evidence in future criminal trials; and increased future sentences.  See Maleng, 490 U.S. at 491-92; Perez v. Greiner, 296 F.3d 123, 125 (2d Cir. 2002) (discussing Sibron v. New York, 392 U.S. 40, 54-56 (1968).  Neither the Supreme Court nor the Second Circuit has addressed whether the requirements of sex offender registration laws also constitute the collateral consequences of a conviction.

    **B.**      **Sex Offender Registration Laws & the "In Custody" Requirement**

          **1.**      **New York's Sex Offender Registration Act**

New York's Sex Offender Registration Act—commonly known as "Megan's Law"—requires all convicted sex offenders "to register with law enforcement authorities and provides for the disclosure of information about the registrants to local law enforcement authorities, entities with vulnerable populations, and the public at large in enumerated circumstances." Doe v. Pataki, 481 F.3d 69, 70-71 (2d Cir. 2007).  SORA divides sex offenders into three categories based upon the "risk level" assigned to the offender and has different reporting requirements for each level of offender.  See N.Y. Correct. Law § 168-l(6).  That level is assessed based upon the risk that the offender poses to the community as determined by the New York State Board of

10

Examiners of Sex Offenders, which was created by SORA. See id. § 168-1(1), (6). The higher the risk level, the greater the risk the offender poses to the community. See id. Rodriguez is classified as a level three offender, the highest of the three levels. Pet'r's Decl. at 2 & Ex. Q (Dkt. No. 12). Thus, like all level three offenders, he must, among other things, personally verify his address with local law enforcement every 90 days, N.Y. Correct. Law § 168-h(3), report to local law enforcement annually to have his photograph taken, id. § 168-f(2)(b-2), and notify the Division of Criminal Justice Services in writing of any change of his address, id. § 168-f(4). He must meet these obligations for the rest of his life. Id. § 168-h(2). Failure to register or verify as required by SORA is punishable as a class E felony upon conviction for the first offense; any subsequent offense is punishable as a class D felony. See id. § 168-t.

SORA's registration provisions are similar to those of other versions of Megan's Law across the country. See, e.g. 42 PA. Cons. Stat. § 9795.1(b); id. § 9796(a) (2010) (requiring highest level sex offenders to personally verify their addresses with local law enforcement every 90 days for the rest of their lives); N.J. Stat. Ann. § N.J.S.A. 2C:7-2(e), (f) (2010) (same); Me. Rev. Stat. tit. 34-A, § 11222-4 (2010) (same); Ark. Code Ann. § 12-12-906(h)(1) (2010) (same); 730 Ill. Comp. Stat. Ann. 150/6 (2010) (same); Colo. Rev. Stat. Ann. § 16-22-108(1)(d) (2010) (same); Cal. Penal Code § 290.012(b) (2010) (same). Moreover, as here, petitioners across the country have contended that the requirements of such sex offender registration laws meet the "in custody" requirement for purposes of federal habeas review.

## 2.     Other Circuit Court Decisions

Every Circuit Court that has addressed whether the requirements of a state sex offender registration law satisfy the "in custody" requirement of Section 2254 has concluded that they do

not.  See Virsnieks v. Smith, 521 F.3d 707, 720 (7th Cir. 2008) (Wisconsin sexual offender

registration law); Leslie v. Randle, 296 F.3d 518, 522-23 (6th Cir. 2002) (Ohio sex offender

registration law); Henry v. Lungren, 164 F.3d 1240, 1241-42 (9th Cir. 1999) (California sex

offender registration law); McNab v. Kok, 170 F.3d 1246, 1247 (9th Cir. 1999) (per curiam)

(Oregon sex offender registration law); Williamson v. Gregoire, 151 F.3d 1180, 1185 (9th Cir.

1998) (Washington sex offender registration law).

      The Ninth Circuit, in Williamson, was the first Circuit Court to address the issue.  There,

the court considered whether a convicted pedophile, Williamson, who had been released from

prison but was required to register under Washington State's sex offender registration statute,

could be deemed "in custody" under Section 2254.  Williamson, 151 F.3d at 1183.  The statute

required Williamson, among other things, to register with local law enforcement and verify his

address yearly.  Id. at 1181.  It also provided that local law enforcement were to notify the state's

central registry of sex offenders of the information and authorized the state to release information

to the public about Williamson when the agency determined that disclosure of the information

was relevant and necessary to protect the public.  Id. at 1181-82.  The Ninth Circuit concluded

that these registration and notification provisions were insufficient to place Williamson "in

custody" for purposes of habeas review.  Id. at 1185.

      The court first reasoned that, unlike in Jones and Hensley, the sex offender registration

statute did not impose "a significant restraint on [petitioner's] physical liberty."  Id. at 1183-84.

Indeed, the court emphasized that the sex offender registration law did not require petitioner's

physical presence at any given place or time or specify any place that petitioner could not go.  Id.

at 1184.  Second, while the court acknowledged that "the registration and notification provisions

might create some kind of subjective chill on [petitioner's] desire to travel," it reasoned that the attendant burdens on petitioner for moving were not much greater than those involved in not moving and stressed that the loss of a driver's license—a collateral consequence that does not satisfy the "in custody" requirement—"amounts to a much greater limitation on one's freedom of movement than does the Washington sex offender law, . . . ." Id. (citations omitted).  Third, although failure to comply with the law's registration requirements could potentially lead to petitioner's incarceration, the court explained, this potentiality was "dependent entirely on whether [petitioner] chooses to obey the Washington statute, [and] actually makes the sex offender law very similar to the restitution orders that other courts have found not to create custody." Id. (citation omitted).  Finally, the court explained that a final reason to find that the law does not meet the "in custody" requirement is that the law is "regulatory and not punitive" and that it amounts to a "form of civil regulation . . . more analogous to a loss of the right to vote or own firearms, or the loss of a professional license, rather than probation or parole." Id. Consequently, the court held that the registration law did "not place Williamson 'in custody' for purposes of federal habeas corpus" and therefore affirmed the district court's dismissal of the habeas petition for lack of jurisdiction. Id. at 1184-85.

### 3.    District Court Decisions

In addition to subsequent decisions of the Ninth, Sixth and Seventh Circuits that have examined and approved of the Williamson decision, see Virsnieks, 521 F.3d at 719-20;  Randle, 296 F.3d at 522; Henry, 164 F.3d at 1241-42; Lungren, 164 F.3d at 1241-42; McNab, 170 F.3d at 1247, it appears that every federal district court that has considered the issue has reached the same conclusion—that the requirements of state sex offender laws, many more severe than the

13

requirements of the Washington State law at issue in <u>Williamson,</u> constitute mere collateral consequences of a conviction and not restraints on a petitioner's liberty sufficient to render a petitioner "in custody" under Section 2254(a).  <u>See, e.g., Williams v. Dist. Attorney of Allegheny Cnty.,</u> No. 10 Civ. 353 (PL), 2010 WL 4388073, at *9 (W.D. Pa., Oct. 29, 2010) (Pennsylvania sex offender registration law); <u>Daniels v. Jones,</u> No. 10 Civ. 00763 (BNB), 2010 WL 3629835, at *5 (D. Colo. Sept. 9, 2010) (Colorado sex offender registration law); <u>Coleman v. Arpaio,</u> No. 09 Civ. 6308 (PGS), 2010 WL 1707031, at *3 (D.N.J. Apr. 27, 2010) (New Jersey sex offender registration law); <u>Hansen v. Marr,</u> 594 F. Supp. 2d 1097, 1100-01 (D. Neb. 2009) (Nebraska sex offender registration law); <u>Stevens v. Fabian,</u> No. 08 Civ.1011 (ADM) (AJB), 2009 WL 161216, at *1 (D. Minn. Jan. 22, 2009) (Minnesota sex offender registration law); <u>Caires v. Iramina,</u> No. 08 Civ. 110 (SOM) (KSC), 2008 WL 2421640, at *3 (D. Haw. June 16, 2008) (Hawai'i sex offender registration law); <u>Davis v. Nassau County,</u> 524 F. Supp. 2d 182, 187-89 (E.D.N.Y. 2007) (New York and Oklahoma sex offender registration laws); <u>Ali v. Carlton,</u> No. 04 Civ. 398 (TGH), 2005 WL 1118066, at *2 (E.D. Tenn. Apr. 25, 2005) (Tennessee sex offender registration law).

<u>Davis v. Nassau County</u> is the only decision in the Second Circuit that has addressed whether New York's SORA requirements alone render a habeas petitioner "in custody."[3] There, after petitioner pleaded guilty to a charge of Sexual Abuse in the First Degree, he was sentenced to three years in prison, and was determined to be a sex offender under SORA.  <u>Davis,</u>

---

[3]Although it did not address the "in custody" issue, the court in <u>Stephens v. United States,</u> No. 06 Civ. 5386, 2007 WL 1233557, at *3 (E.D.N.Y. Apr. 25, 2007), concluded, in response to a habeas petitioner's argument that his counsel rendered ineffective assistance of counsel for failing to inform him of sex offender registration requirements, that "[r]egistration as a sex offender is a collateral effect and improper advice as to such a collateral effect does not support

14

524 F. Supp. 2d at 185.  After his release from prison and his eventual discharge from parole, petitioner registered as a convicted sex offender as required by SORA.  Id.  Roughly five years later, he filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his conviction for sexual abuse and contending that the sex offender registration requirement that resulted from the conviction constituted a restraint that satisfies the "in custody" requirement.  Id. at 185, 187.

Judge Bianco disagreed and held "that the fact that petitioner is subject to . . . sex offender registration requirements as a result of his underlying conviction does not constitute being 'in custody,' such that it can permit federal habeas review of the expired underlying conviction."  Id. at 188.  His conclusion, he noted, was not an aberration—"courts have consistently held that the sex offender registration requirement is merely a collateral consequence of conviction, and does not constitute the type of severe, immediate restraint on physical liberty necessary to render a petitioner 'in custody' for the purpose of federal habeas corpus review."  Id. (citing cases).

I agree with the decision in Davis and conclude that SORA's requirements constitute collateral consequences of Rodriguez's conviction, insufficient to render him "in custody" for purposes of federal habeas corpus.  To be sure, SORA's requirements subject Rodriguez to certain burdens "not shared by the public generally," Jones, 371 U.S. at 240; however, these requirements do not restrain Rodriguez's physical sense of liberty or freedom of movement and do not constitute the type of "severe actual or potential restraint on liberty" for which the use of

---

an ineffective assistance of counsel claim."

15

the extraordinary remedy of habeas corpus has traditionally been reserved.  Poodry, 85 F.3d at

880 (citing Jones, 371 U.S. at 243).

Although SORA, like a number of sex offender laws across the county—including the

one at issue in the Sixth Circuit's decision in Leslie—requires Rodriguez to personally verify his

address with local law enforcement every 90 days, the statute applies to Rodriguez "whether he

stays in the same place or whether he moves," Leslie, 296 F.3d at 518 (quoting Williamson, 151

F.3d at 1184), and it does not condition Rodriguez's "ability to move to a different community or

residence . . . on approval by a government official."  Id. at 522.  Thus, unlike an alien excluded

from the United States who can petition for habeas corpus because, although the alien is free to

travel anywhere else in the world, "[h]is movements . . . are restrained by authority of the United

States," Jones, 371 U.S. at 240 (citation and internal quotations omitted), or a band of Indians

who can petition for habeas corpus because, subject to a banishment order from their tribe, "they

may be compelled to 'go,' [from the tribe's reservation] and no longer welcome to 'come[,]'"

Poodry, 85 F.3d at 895, Rodriguez is completely free to move about as he pleases.  SORA does

not prevent Rodriguez from traveling in New York or leaving the state or restrain his movement

in any significant or severe way.  Indeed, if he wishes to move, Rodriguez simply must notify the

Division within 10 days of completing the move.  See N.Y. Correct. Law § 168-f(4).

Moreover, SORA is considered a remedial, not a punitive, statute.  The New York Court

of Appeals recently reiterated "that SORA is not a penal statute and the registration requirement

is not a criminal sentence.  Rather than imposing punishment for a past crime, SORA is a

remedial statute intended to prevent future crime."  People v. Gravino, 14 N.Y.3d 546, 556, 902

N.Y.S.2d 851, 857 (2010) (quoting Matter of North v. Board of Examiners of Sex Offenders of

16

State of <u>N.Y.</u>, 8 N.Y.3d 745, 752, 840 N.Y.S.2d 307, 312 (2007); <u>accord</u> <u>Doe v. Pataki</u>, 120 F.3d 1263, 1277 (2d Cir. 1997) (describing the "twin purposes" of SORA as "protecting communities by notifying them of the presence of individuals who may present a danger and enhancing law enforcement authorities' ability to fight sex crimes"). SORA's remedial nature further supports the conclusion that SORA's registration provisions are more analogous to collateral consequences of a conviction such as deportation, the loss of the right to vote, and inability to become a citizen, than to severe restraints on liberty such as parole. <u>See</u> <u>Virsnieks</u>, 521 F.3d at 720; <u>Leslie</u>, 296 F.3d at 523; <u>Williamson</u>, 151 F.3d at 1184-85.

Accordingly, since (1) Rodriguez's criminal sentence had fully expired at the time of the Petition; and (2) the collateral consequences of his criminal conviction are limited to SORA's requirements, Rodriguez is not "in custody" for the purposes of his 28 U.S.C. § 2254 challenge to his conviction. I therefore recommend that the Court dismiss the Petition for lack of subject matter jurisdiction.

### III.   CONCLUSION

For the foregoing reasons, I recommend that the Petition (Dkt. No. 2) be DISMISSED for lack of subject matter jurisdiction. Further, I recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A). Where, as here, the denial of a petition is based on procedural grounds, a certificate of appealability "must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, <u>and</u> (2) that the applicant has established a valid constitutional violation." <u>Richardson v. Greene</u>, 497 F.3d 212, 217 (2d Cir. 2007) (citing <u>Slack v. McDaniel</u>, 529 U.S. 473, 478 (2000)). Such a showing cannot be made here.

## PROCEDURES FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul G. Gardephe and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Gardephe. **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** See Thomas v. Arn, 474 U.S. 140, 154 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010) (citing Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003) and Mario v. P&C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. If Plaintiff does not have access to cases cited herein that are reported on LEXIS/WESTLAW, he should request copies from Defendants' counsel. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

Dated: New York, New York
      February 15, 2011

JAMES L. COTT
United States Magistrate Judge

**Copies of this Order have been sent by mail to the following:**

Roberto Rodriguez
79-25 Winchester Blvd., 9B
Queens Village, NY 11427

Paul M. Tarr
Assistant Attorney General
Office of the Attorney General, State of New York
120 Broadway
New York, NY 10271

Pro Se Office – Room 230

Hon. Paul G. Gardephe